UNITED STATES of America, Appellee,

v.

Pasquale ALOSA, Defendant, Appellant.

No. 92–2480.

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1993.

Decided Jan. 31, 1994.

David H. Bownes, Laconia, NH, by Appointment of the Court, with whom Law Office of David H. Bownes, P.C. was on brief, for defendant, appellant.

David A. Vicinanzo, Asst. U.S. Atty., with whom Peter E. Papps, U.S. Atty., was on brief for the U.S.

Before BREYER, Chief Judge, BOUDIN, Circuit Judge, and POLLACK,* Senior District Judge.

BOUDIN, Circuit Judge.

On April 9, 1992, law enforcement agents armed with a search warrant entered the home of Pasquale and Lisa Alosa in Loudon, New Hampshire. The search uncovered substantial amounts of marijuana, marijuana plants, a basement "garden" for growing them, scales, plastic bags, two loaded handguns, and 16 other unloaded firearms. Also found were two different collections of papers which, for simplicity, have been referred to as ledgers. A man named Robb Hamilton was also present on the premises and was later implicated.

Both Alosas and Hamilton were later named in an indictment that, as expanded by a superseding indictment, charged Pasquale and Lisa in four counts: unlawful manufacture of a controlled substance, 21 U.S.C. § 841 (count I); possession with intent to distribute, id. (count II); use of a firearm—namely, the two handguns—during and in relation to a drug trafficking crime (count III), 18 U.S.C. § 924(c)(1); and conspiracy to possess with intent to distribute, 21 U.S.C. § 846 (count IV). Hamilton was charged only in count IV.

Prior to trial Pasquale twice moved to sever his trial on the gun count from his trial on the other three counts. The first request merely said that Pasquale "may" want to testify on the gun count but remain silent on the others and would be prejudiced by joinder of the counts. The second request said that he did not want to testify on anything other than the gun charge and was entitled to testify on that charge to refute the suggestions that the guns were used in drug trafficking. This request also pointed to its list of witnesses who would testify for Pasquale concerning his "use and possession of firearms." The district court denied both requests for severance.

Then, during jury selection in August 1992, Pasquale filed a motion in limine requesting the court to "preclude the government or any of the co-defendants' counsel [from eliciting testimony from him] regarding matters outside the scope of his [contemplated direct] testimony." That direct testimony, the motion said, would describe his longtime involvement with firearms, explain his reasons for their possession, and show that they were not for use in drug trafficking. Pasquale also now pled guilty to the first two counts—manufacture and possession with intent to distribute—and he argued that this further diminished the government's need to cross-examine him about his drug activities.

The district court denied the in limine request. It reaffirmed this denial when the request was renewed at the close of the government's case in chief. In this renewed request, Pasquale provided further detail as to his proposed testimony, explaining that he would testify that the handguns were purchased and used "for fun" and not for drug trafficking. In a post-trial order, the district court said that it refused to grant the in limine requests because "a defendant's testimony invites cross examination on topics made relevant by his direct testimony."

The defendants were tried together using multiple juries.[1] Pasquale did not testify but did offer witnesses who described his sporting and collector's interest in guns. On August 31, 1992, the jury convicted Pasquale on counts III and IV—the two counts on which he had not already pled guilty—and he now appeals from those convictions. Lisa was convicted on counts II and IV and acquitted on the other counts, but died in an automobile accident before sentencing. Hamilton was convicted of misdemeanor possession and has not appealed.

■ Pasquale's first argument on appeal is that the district court erred in denying his motions to sever the gun count from the other counts. Severance for undue prejudice is a matter committed to the sound discretion

---

* Of the Eastern District of Pennsylvania, sitting by designation.

1. Prior to trial Lisa made a number of admissions to the authorities concerning the Alosas' drug sources, and she decoded various of the transaction entries in the ledgers. Because some evidence admissible against her was not admissible against Pasquale, his jury was excused while such evidence was presented to her jury.

of the trial judge, and a refusal to sever will be overturned only for abuse of discretion. *See, e.g., United States v. Olivo–Infante,* 938 F.2d 1406, 1409 (1st Cir.1991). Further, a refusal to sever *related* counts, naming the *same* defendant, may be the least likely candidate for appellate reversal. Still, Pasquale's counsel—who appears to have played a weak hand with skill and foresight—has built a case somewhat stronger than the usual general claim of potential confusion or "spillover" effects.

▪ Rather, Pasquale has sought shelter in a doctrine, developed elsewhere but cited approvingly in this circuit, that a defendant may deserve a severance of counts where the defendant makes "a convincing showing that 'he has both important testimony to give concerning one count and strong need to refrain from testifying on the other.'"[2] This in turn requires a defendant to offer in timely fashion "enough information" so that the court can weigh "the considerations of judicial economy" against the defendant's "freedom to choose whether to testify" as to a particular charge. *Scivola,* 766 F.2d at 43.

It may be doubtful whether, prior to trial, Pasquale explained his position in adequate detail; his first motion was bland and conditional and even his second was sparse. *See United States v. Tracy,* 989 F.2d 1279, 1283 (1st Cir.1993). Still, the second request suggested that Pasquale wanted to testify in order to deny that the guns were used for drug trafficking—a rather simple proposition. As for not testifying on other counts, Pasquale has never explained exactly what he feared. But we prefer to treat the case as if Pasquale had said what we think is apparent: that the government had overwhelming proof against him on counts I and II but little direct proof of conspiracy, and he did not wish to help it to close this gap.

Even assuming that Pasquale had said all this plainly and at the outset, we think that the denial of the severance would still have to be sustained. The limited case law on *Scivola*-type motions does not greatly illuminate the question just how "important" must be the defendant's proffered testimony or what

kind of "strong" reasons explain the need not to testify on other counts. But obvious considerations of judicial economy support trying all related counts against the same defendant at one time. And while the courts zealously guard a defendant's Fifth Amendment right not to testify at all, the case law is less protective of a defendant's right to testify selectively, addressing some issues while withholding testimony on others that are related. *See Brown v. United States,* 356 U.S. 148, 155–56, 78 S.Ct. 622, 627, 2 L.Ed.2d 589 (1958).

The facts of this case do not argue strongly for a severance. Pasquale's testimony that the hand guns were "for fun" might have been of some help to him, although his general "gun enthusiast" story was presented through other witnesses. Even if he had testified, it is still unclear (no proffer was made) how he could have explained the fact that one or both of the guns were apparently loaded, one—found under his bed—was a semi-automatic pistol and the other—found in a drawer near the front door—was a high-powered .357 magnum. This testimony is some distance from, say, a credible alibi that only the defendant can supply showing him to have been elsewhere at the time of the crime.

As for the other side of the equation—the need not to testify—we may assume that honest testimony from the defendant on the conspiracy issue would have nailed down that charge. But (as we explain below) the government needed little help on this score once the drug ledgers and related testimony as to Lisa's connection to them were considered. Given the broad discretion permitted to trial courts in deciding severance questions, *Olivo–Infante,* 938 F.2d at 1409, we think that in this case the denial of severance was assuredly not an abuse of that discretion.

In short, the government charged Pasquale with closely related offenses: drug trafficking, conspiracy, and use of a firearm in connection with trafficking. If Pasquale wanted to testify on the firearm charge and deny the use of the handguns in connection

---

2. *United States v. Scivola,* 766 F.2d 37, 43 (1st Cir.1985) (quoting *Baker v. United States,* 401 F.2d 958, 977 (D.C.Cir.1968), *cert. denied,* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970)).

with drug trafficking, the nature and scope of his drug trafficking would normally be a fit subject for cross examination; and it is inherent in such an examination that it might help the government prove the conspiracy charge. The Fifth Amendment protects the defendant's right to choose whether to testify. It does not assure that the testimony will only benefit the defendant. *McGautha v. California*, 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971).

Turning to Pasquale's other arguments, the second string to his bow on appeal is a claim that the court erred in admitting the drug ledgers. One set of papers had been found inside a stove in the kitchen; the other set was in the living room. They contained entries concerning various transactions, including amounts and customer names. The government not only introduced the ledgers but, over objection, offered expert handwriting and print evidence that associated both ledgers in some degree with Lisa and one of them with Hamilton.

■ Pasquale's brief says that it was error to admit the ledgers because the government failed to offer evidence, independent of the ledgers, to show that they qualified as co-conspirator statements made in furtherance of the conspiracy. Under Fed.R.Evid. 801(d)(2)(E), a statement avoids hearsay objections if the trial judge finds by a preponderance of the evidence that an out-of-court statement was made by a co-conspirator and was made in furtherance of the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). It may lessen the confusion that surrounds drug ledger evidence to point out that what needs to be proved for admissibility depends upon the use to be made of the evidence.

■ First, if records manifestly are or are shown by other evidence to be drug records, they are admissible "real evidence" tending to make it more likely that a drug business was being conducted, *see United States v.*

*Tejada*, 886 F.2d 483, 487 (1st Cir.1989), and for this use there is ordinarily no hearsay problem to be overcome. Rather, the records help to show "the character and use of the place where the notebooks were found," *United States v. Wilson*, 532 F.2d 641, 645 (8th Cir.1976), just like drugs, scales and guns. Here, the nature of the ledgers was indicated not only by the type of entry—which would have been sufficient—but also by expert testimony from a DEA agent who gave his opinion that the records related to drug transactions.[3]

■ Second, in this case the ledgers served the further purpose of helping to prove the existence of a conspiracy. Pasquale's own involvement in drugs was established by his pleas and much other evidence, but relatively little direct evidence in his trial showed active participation by Lisa in the business (her own admissions to the police were not made known to Pasquale's jury). Most of the drugs and related items were found either in Pasquale's areas of the house or in common areas. But the ledgers, once they were tied to Lisa by handwriting and print evidence, made the inference of conspiracy easy.

Once again this use of the ledgers presented no hearsay problem in this case. The "truth" of individual statements in the ledgers is beside the point; all that matters is that the ledgers are drug records to which Lisa may be linked by other evidence. Nor is there a hearsay problem posed by testimony from a handwriting or print expert that connected Lisa to the ledgers. Thus, for the most important use of the ledgers in this case—to help show more than one participant and thus a conspiracy—there was no need for a preliminary finding of likely conspiracy nor any need to satisfy Rule 801(d)(2)(E).

■ Third, when it made its proffer in support of the ledgers, the government reserved the right to use the ledgers to show not only the fact of conspiracy but also, by

---

**3.** Using the entries to show the character of the ledgers as drug records does, of course, present some of the risks of hearsay; but under the modern definition of hearsay, such a use does not render the entries hearsay because the entries are not being used to prove the truth of the matter asserted in the entries (*e.g.*, that a specific transaction took place on a particular date). See Fed.R.Evid. 801(c) (hearsay is an out of court statement offered "to prove the truth of the matter asserted"); 2 John W. Strong et al., *McCor-*

relying on specific entries, the dimensions of the conspiracy. To the extent that the prosecutor wanted to argue that an individual entry was "true"—say, one showing a specific sale of a specific amount to a specific person—then some hearsay exception or exclusion did need to be satisfied. Here, Rule 801(d)(2)(E) was invoked. In admitting the evidence, the district court expressly found by a preponderance of the evidence that the ledgers were made by conspirators in furtherance of the conspiracy.

These findings were amply supported by admissible non-hearsay evidence.[4] Lisa's presence in the home, with a marijuana garden in the cellar and drugs and paraphernalia throughout was highly suggestive. The notion that "presence" at a crime does not equal guilt is not a ban on common sense inferences: the evidence of pervasive drug production and dealing in Lisa's home was material evidence that made her involvement more plausible. Once she was linked to the drug ledgers—a linkage that also did not happen to depend on hearsay—the trial judge could easily conclude that a conspiracy had been shown and admit the ledgers for the truth of the statements contained within them.

Not only did the evidence of joint drug dealing by husband and wife satisfy Rule 801(d)(2)(E)—which requires only a probability or likelihood of conspiracy—but the evidence amply satisfied the higher standard of proof beyond a reasonable doubt required for conviction. Although Pasquale purports to dispute the sufficiency of the evidence to convict him of conspiracy, we think that this is not a serious argument and requires no further discussion. Other claims of error have been considered but need no separate comment.

*Affirmed.*

---

mick on Evidence § 250, at 112 (1992) (collecting cases).

**4.** Actually, Fed.R.Evid. 104(a) permits the judge to consider the hearsay statements for their truth in making the admissibility findings, *see Bourjaily*, 483 U.S. at 178–80, 107 S.Ct. at 2780–81, although this court has recently joined other circuits in holding that there must be some evidence of conspiracy independent of the hearsay statements themselves. *United States v. Sepulveda*, 15 F.3d 1161, 1182 (1st Cir.1993). Here, consideration of the statements in the ledgers for their truth was entirely unnecessary (and largely irrelevant) to those admissibility findings.