**UNITED STATES of America, Appellee,**

v.

**George R. JORDAN, Jr., Defendant, Appellant.**

**Nos. 96–1396, 96–1397.**

United States Court of Appeals, First Circuit.

Heard Feb. 5, 1997.

Decided April 29, 1997.

Jane Elizabeth Lee, for appellant.

George R. Jordan, Jr., on supplemental brief pro se.

F. Mark Terison, Assistant United States Attorney, with whom John S. Gleason III, Assistant United States Attorney, Portland, ME, and Jay P. McCloskey, United States Attorney, Bangor, ME, were on brief for appellee.

Before SELYA, Circuit Judge, ALDRICH and CYR, Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This case arises from the conviction of defendant George Jordan, Jr. ("Jordan") after two trials, on various charges of fraud, money laundering, tax evasion, and filing false tax returns. He appeals his convictions and sentences. We affirm in part and reverse in part.

### I.  Background

Jordan was employed as a risk manager by the Pioneer Plastics Corporation ("Pioneer") from 1989 to April 1993. His primary responsibility was the investigation and resolution of claims filed by Pioneer employees

under its self-insured workers compensation program. The investigation phase included ongoing, surreptitious "activity" checks on disabled employees to verify that they were, in fact, not able to work. Toward this end, in 1990, he formed his own investigation company, PineTree Insurance Services ("Pine-Tree"), and began submitting invoices to Pioneer for investigations and activity checks. Jordan submitted invoices on behalf of Pine-Tree, approved them, mailed checks on behalf of Pioneer to PineTree's P.O. Box, and ultimately endorsed and deposited these checks into his personal checking account. The relationship between Jordan and Pine-Tree violated Pioneer's prohibition against undisclosed outside business interests with the potential to influence an employee's judgment in the performance of his duties.

In early 1993, a manager at Pioneer became concerned about the high level of Pine-Tree expenses. An internal investigation ensued. When another manager attempted to contact PineTree he could find no telephone number or street address. Jordan's secretary, when questioned, revealed that Jordan hand-delivered the invoices which contained only a P.O. box address. Upon further investigation, the box was discovered to be registered to Jordan. On the day following this discovery, Jordan resigned from Pioneer. After his departure, a Pioneer officer searched Jordan's office and discovered Pine-Tree investigative reports printed in "one big long document."

Six months later, Jordan was indicted on five counts of mail fraud, 18 U.S.C. §§ 1341, 1342, 1346, four counts of wire fraud, 18 U.S.C. § 1343, and a single count of money laundering, 18 U.S.C. § 1956(a)(1)(B)(ii). After a three day jury trial he was acquitted of the wire fraud charges. A mistrial was declared when the jury was unable to reach a verdict on the remaining counts.

In August 1995, while awaiting retrial, Jordan was indicted on four counts of income tax evasion, 26 U.S.C. § 7201, and two counts of filing a false income tax return, 26 U.S.C. § 7206(1), stemming from the PineTree scheme. Over his objection, the court allowed the government to join for trial the tax indictments and the remaining mail fraud

and money laundering charges. This time Jordan was convicted on all counts and sentenced to 72 months imprisonment, three years supervised release, special assessments of $600 and restitution to Pioneer of $158,-603.10.

## II. *Joinder and Prejudice*

Jordan renews here his earlier objection to the court's decision to allow the government to join the outstanding charges from the first trial with the tax evasion counts. We note at the outset that instead of responding to the government's motion for joinder under Fed. R.Crim.P. 13, defendant used his response to argue prejudice under Fed.R.Crim.P. 14, most often utilized in a separate motion to sever. Although these may involve different standards of review, *see United States v. Edgar,* 82 F.3d 499, 503 (1st Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 184, 136 L.Ed.2d 123 (1996), and *United States v. Alosa,* 14 F.3d 693, 695 (1st Cir.1994), basically our issue is abuse of discretion with respect to prejudice. Jordan, correctly, does not dispute that, substantively, all offenses could have been joined in a single indictment under Fed.R.Crim.P. 8(a). *See United States v. Clayton,* 450 F.2d 16, 18 (1st Cir. 1971). This said, we turn to the question whether the grant of joinder unduly prejudiced.

In order to prevail on this claim, Jordan must make "a strong showing of prejudice." *United States v. Gray,* 958 F.2d 9, 14 (1st Cir.1992). In *United States v. Scivola,* 766 F.2d 37 (1st Cir.1985), we observed that there are three types of prejudice that can emerge from this type of situation:

(1) the defendant may become embarrassed or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a separate trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.

*Id.* at 41–42 (internal citations omitted). Jordan argues here that joinder subjected him to the latter two types of prejudice.

■ Jordan did not testify in either trial, and contends that by allowing the joinder of the fraud, money laundering and tax counts, he was deprived of his Fifth Amendment right to testify as to certain counts but not as to others. In support, he relies on our opinion in *Alosa, ante,* where we remarked that "a defendant may deserve a severance of counts where [he] makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." 14 F.3d at 695 (internal citations omitted). To make this showing, a defendant must timely offer enough information to the court to allow it to weigh the needs of judicial economy versus " 'the defendant's freedom to choose whether to testify' as to a particular charge." *Id.* (quoting *Scivola,* 766 F.2d at 43).

■ In his objection to the government's motion to join indictments, Jordan argued his need to testify in order to produce a "good faith" defense to the tax charges. *See Cheek v. United States,* 498 U.S. 192, 203–04, 111 S.Ct. 604, 611–12, 112 L.Ed.2d 617 (1991) (holding that a defendant is entitled to present his subjective belief that he did not violate the law, even if such belief is objectively unreasonable). To bolster this assertion, he included an offer of proof reciting the testimony that would constitute his defense.[1]

It is difficult to dismiss these grounds. The unique circumstances of this case distinguish it from *Alosa* where the defendant sought to sever a gun count from drug trafficking and conspiracy charges. There, the defendant wanted to testify on the gun charge simply to deny that he had used the guns for drug trafficking and that he owned the guns "for fun." 14 F.3d at 695. We upheld the denial of Alosa's severance motion because that testimony was "some distance from ... a credible alibi that only the defendant can supply showing him to have been elsewhere at the time of the crime." *Id.* Here, we believe that Jordan's subjective testimony on the tax charges is analogous to the "credible alibi" we found lacking in *Alosa.* Only he can supply testimony of his subjective belief as permitted by *Cheek,* forthrightly subjecting himself to cross-examination. We do not accept the government's contention that this belief was adequately before the jury in the form of Jordan's statement on his amended tax form that the income was not taxable.

Nor do we accept its contention that Jordan could have proffered the testimony of his bankruptcy attorney, from whom Jordan received legal advice, as an effective substitute for Jordan's own testimony. While it is likely that the attorney's testimony also would have been helpful in establishing a *Cheek* defense, Jordan contends in his proffer that he previously handled his own tax affairs and also relied on his own independent legal research. *See supra* note 1. On balance, therefore, we conclude that joinder likely had the effect of eviscerating Jordan's planned defense to the tax charges.[2]

The surrender of this privilege was capped by the government's maneuvering that got before the mail fraud jury the allegedly

---

1. Jordan's offer of proof contained the following assertions:

   3) It is anticipated that in the tax prosecution the Defendant would testify that he has in the past handled his own tax filings. He has read various instructions provided by the Internal Revenue Service and has done some independent research regarding tax laws. George Jordan was of the opinion that funds paid to him from the Pioneer Plastics Workers' Compensation Trust were not taxable pursuant to Internal Revenue Code Section 501(c)(9).

   4) Jordan would testify that upon filing for a Chapter 13 bankruptcy, Jordan, upon advice of bankruptcy counsel filed certain forms 1040–X.

   5) Jordan filed form 1040 for 1992 and receive (sic) a refund check of approximately $1000, and in addition, a form 1040–X regarding the Pine Tree income and exemptions under 501(c)(9) were filed.

   6) Forms 1040–X were filed for the years 1990, 1991, 1992, and 1993.

2. We emphasize, however, that we do not hold that a defendant's mere assertion of a *Cheek* defense invariably requires severance of an indictment charging tax and non-tax offenses. Rather, the court must undertake, on a case-by-case basis, to weigh " 'the considerations of judicial economy' against the defendant's 'freedom to choose whether to testify.' " *Alosa,* 14 F.3d at 695 (citations omitted).

fraudulent tax returns. The government had made substantial efforts at the original trial seeking to introduce the tax returns as proof of intent. The court twice ruled that possible prejudice from these forms outweighed their relevance under Fed.R.Evid. 403. We have here the type of prejudice outlined in *Scivola*, 766 F.2d at 41–42, that of evidence presented that would not have been admissible at a separate trial. By the joinder the government has circumvented the court's ruling. Jury-wise it could be thought better off with evidence that would point in an improper direction tied to an instruction not to so consider it, than not to have it at all.

We have an unusual situation. With the Fifth Amendment involved should either, both, or neither of the mail fraud, etc. convictions, and tax evasion convictions, be set aside? There are recognized benefits (to all, except, usually, the defendant) in having joint trials. Traditionally, defendants may, to an extent, have to stand the cost, the extent to be determined by the court's discretion. In the second mail fraud trial, by choosing not to take the stand defendant felt only one prejudice, the jury's knowledge of the tax cases. At the original trial the court, in excluding evidence of those charges, had described it as of minimum value to the government. While we agree with Jordan that it would have been happier for him not to have had that evidence now get in through the back door by the joinder, we believe it was within the court's discretion, in the absence of a Fifth Amendment problem (such as infected the tax counts), to subject him to the ordinary consequences of joinder of indictments.

This is not to say that Jordan did not endure some loss. There should be some limit to the harm the government should impose to meet the court's Rule 403 finding in the original action. By bringing the tax indictment, and joining it with the tax charges to get the tax forms before a mail fraud jury, it put Jordan in the proverbial bind—testify, to your loss in the mail fraud case, or do not testify, to your loss in the tax case. Jordan had valid Fifth Amendment reasons for disliking both alternatives, and we do not think the government should have it both ways. We allow one, but it should not complain that we hold it to its original decision of non-joinder. The convictions and sentences on the tax counts are vacated.

### III. *Requirements of a Scheme to Defraud*

■ Continuing with the mail fraud case, Jordan next argues that the government failed to allege and prove that Pioneer suffered actual harm or that he was unjustly enriched as a result of the fraud as required under the 18 U.S.C. § 1341.[3] The government contends that defendant affirmatively waived this ground by requesting a jury instruction on the mail fraud count that did not include any mention of actual harm or unjust enrichment.[4] We agree. *See United States v. Mitchell*, 85 F.3d 800, 808 (1st Cir.1996) (citing *United States v. Marder*, 48 F.3d 564, 571 (1st Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 1441, 131 L.Ed.2d 320 (1995)). For the mail fraud case we add only the following.

Prior to the enactment of 18 U.S.C. § 1346 in 1988, the Supreme Court had held in *McNally v. United States*, 483 U.S. 350, 360, 107 S.Ct. 2875, 2881–82, 97 L.Ed.2d 292 (1987), that schemes to defraud under the mail and wire fraud statutes did not encompass the intangible right to honest government but were limited to schemes to defraud

---

**3.** 18 U.S.C. § 1341 reads in relevant part:
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent to delivered by the Postal Service ... or takes or receives therefrom ... shall be fined under this title or imprisoned not more than five years or both.

**4.** The jury instruction Jordan requested reads as follows:

Intent to Defraud—Defined:
To act with an "intent to defraud" means to act knowingly and with the intention or purpose to deceive or cheat. An intent to defraud is accompanied, ordinarily by a desire or purpose to bring about some gain or benefit to one's self.

a victim of money or property. Congress responded by enacting section 1346, expanding the definition of fraud to include "a scheme or artifice to deprive another of the intangible right of honest services."

 In light of the advent of § 1346, in order to prove mail fraud under § 1341 the government must show "that the defendant used the mails for the purpose of executing or attempting to execute a scheme to defraud," *United States v. Allard,* 926 F.2d 1237, 1242 (1st Cir.1991), and such scheme may include one to deprive another of the intangible right to honest services, *United States v. Sawyer,* 85 F.3d 713, 732 (1st Cir. 1996). What is required is that "an articulable harm befall [the victim] as a result of the defendant's activities, or some gainful use must be intended by the [defendant], whether or not this use is profitable in the economic sense." *United States v. Czubinski,* 106 F.3d 1069, 1074–75 (1st Cir.1997). Actual monetary harm or unjust enrichment is therefore not required. A defendant need not even successfully carry out the scheme to defraud in order to be found guilty. *Id.; Allard,* 926 F.2d at 1242.

Even if we had not found Jordan's argument waived, we agree that the government presented sufficient evidence that the jury could have found that Jordan deprived Pioneer of his services and/or its money through a scheme to defraud.

### IV. *Double Jeopardy*

Finally, Jordan contends that the district court's decision to sentence him on the tax evasion counts and the false filing counts violated the double jeopardy clause, because the latter counts charge lesser included offenses.[5] *See Rutledge v. United States,* —— U.S. ——, —— —— ——, 116 S.Ct. 1241, 1247–50, 134 L.Ed.2d 419 (1996). Since we are vacating the tax convictions, we need express

no view on this contention at the present time.

### V. *Conclusion*

Defendant has also filed a pro se brief. We do not discuss it here as we find his arguments to be without merit.[6] His convictions and sentences on Counts I through X of the first indictment are affirmed. The convictions and sentences on all counts of the second indictment are vacated and this case remanded for further proceedings in accordance with this opinion.

---

5. Other circuits have endorsed Jordan's contention. *See, e.g., United States v. Kaiser,* 893 F.2d 1300, 1305 (11th Cir.1990). Since the panel is not in agreement as to whether this contention raises an issue of first impression in this circuit, or whether it is foreclosed by *Gaunt v. United States,* 184 F.2d 284, 288 (1st Cir.1950), we leave that matter for another day.

6. Nor do we address Jordan's claim that the court improperly excluded his correspondence with the Internal Revenue Service as hearsay. At his next trial, Jordan will be free to present the arguments he failed to make below.