# United States Court of Appeals
## For the First Circuit

No. 03-1487

UNITED STATES OF AMERICA,

Appellee,

v.

COLEMAN J. FENTON, JR., A/K/A JOSEPH C. FENTON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, Senior U.S. District Judge]
[Hon. George Z. Singal, U.S. District Judge]

Before

Selya, Circuit Judge,

Cyr, Senior Circuit Judge,

and Howard, Circuit Judge.

Eileen F. Shapiro, by appointment of the court, on brief for appellant.
Paula D. Silsby, United States Attorney, and Margaret D. McGaughey, Appellate Chief, on brief for appellee.

May 4, 2004

**SELYA**, **Circuit Judge**.    A federal grand jury in the District of Maine indicted defendant-appellant Coleman J. Fenton, Jr. on thirty-four counts stemming from his involvement in a drug-trafficking conspiracy.  Following his conviction on thirty-one counts and the imposition of sentence, Fenton appeals.  He mounts a multi-dimensional challenge, claiming (i) that a prejudicial variance occurred because the government's proof showed multiple conspiracies rather than the single overarching conspiracy alleged in the indictment; (ii) that the district court erred both in allowing the joinder of counts that ought to have been charged separately and in failing to sever the mismatched counts; (iii) that the government failed to prove an essential element of the count charging malicious destruction of property by means of an explosive device; and (iv) that the Double Jeopardy Clause barred conviction and sentencing on six counts that constitute lesser included offenses of other counts of conviction.

After exhaustive examination of an amplitudinous record, we find the appellant's first three arguments unpersuasive. We do, however, accept his final point.  Accordingly, we vacate the convictions and sentences on six counts; affirm the convictions and sentences on the remaining twenty-six counts; and remand for entry of an amended judgment.

## I.  BACKGROUND

We briefly sketch the facts, later embellishing this sketch as required in connection with our discussion of particular issues.  Throughout, we take the facts in the light most favorable to the government, consistent with record support.  United States v. Noah, 130 F.3d 490, 493 (1st Cir. 1997).

The appellant plied the cocaine trade for a number of years as the prime mover in a drug-trafficking enterprise based in South Portland, Maine.  He enlisted a number of other people as accomplices.  These recruits included his son, Joey Beeler; his daughter, Kristin Beeler; and their half-sister, Brenda Sue Beeler.  All three of these individuals testified for the government at the appellant's trial.

The evidence showed that Joey began selling drugs for his father in 1994, but floated in and out of juvenile correctional facilities for the next two years.  Consequently, he did not join the family business in earnest until 1996.  His participation continued until October of 1998, when he was arrested.  Kristin began selling drugs in 1997 and remained active until sometime in 2001.  Brenda Sue got a late start — she did not join the enterprise until 2000 (while still a high-school student) — but stayed in the game until the government's intervention put a halt to the appellant's operations.

The indictment painted a tawdry picture of street-level cocaine sales, supplemented by occasional violence. Count 1 charged the appellant and others with participation in an overarching drug-trafficking conspiracy that operated in Maine from 1996 until 2001. See 21 U.S.C. §§ 841(a)(1), 846. The remaining counts charged specific offenses, including distribution of cocaine on various dates, id. § 841(a)(1); distribution of cocaine within 1,000 feet of a school, id. § 860; enlistment of a minor to assist in conducting narcotics operations, id. § 861(a)(1); malicious destruction of property by means of an explosive device, 18 U.S.C. § 844(i); possession of an unregistered explosive device, 26 U.S.C. §§ 5841, 5861(d); and possession of a destructive device in connection with a drug-trafficking offense, 18 U.S.C. § 924(c).

The case originally was assigned to Senior Judge Carter, who handled many of the pretrial proceedings (including the motion to sever, described infra). Eventually, the case was transferred to Judge Singal, who presided over the appellant's trial. On December 17, 2002, a jury found the appellant guilty on thirty-one counts. Judge Singal sentenced him to an aggregate of forty-seven and one-half years in prison.

## II. PREJUDICIAL VARIANCE

Before us, the appellant's primary claim is that the government failed to prove the existence of a single overarching conspiracy. In his view, the evidence actually revealed two

-4-

separate conspiracies, or, alternatively, a conspiracy that ended with Joey's arrest and morphed into a series of casual drug sales to various of the appellant's acquaintances. The appellant suggests that this failure of proof resulted in a material and prejudicial variance between the crime charged in count 1 and the crime or crimes that the government proved. We must determine whether such a variance occurred and, if so, whether it adversely impacted the appellant's substantial rights. United States v. Perez-Ruiz, 353 F.3d 1, 7 (1st Cir. 2003), cert. denied, 72 U.S.L.W. 3658 (Apr. 19, 2004).

The ground rules are familiar. "In a jury trial, given proper instructions (or in lieu thereof, unchallenged instructions), the jury's determination as to whether one or more conspiracies existed is subject to review only for evidentiary sufficiency." United States v. David, 940 F.2d 722, 732 (1st Cir. 1991). In the case at hand, the trial court instructed the jurors that in order to find the appellant guilty of conspiracy, they must find beyond a reasonable doubt "that the agreement specified in Count 1 of the indictment and not some other agreement or agreements, existed." This was a facially correct instruction, see, e.g., United States v. Balthazard, 360 F.3d 309, 316 (1st Cir. 2004), and one to which the appellant interposed no contemporaneous objection. Our initial inquiry, therefore, is whether the evidence sufficed to support the jury's finding of an overarching

conspiracy.  United States v. Sepulveda, 15 F.3d 1161, 1190-92 (1st Cir. 1993); David, 940 F.2d at 732.

In assessing sufficiency, we "canvass the evidence (direct and circumstantial) in the light most agreeable to the prosecution and decide whether that evidence, including all plausible inferences extractable therefrom, enable[d] a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime."  Noah, 130 F.3d at 494.  It is not our province either to make credibility determinations or to insist that the prosecution rule out other possibilities that the evidence might be read to suggest.  Id.  Furthermore, we must uphold the verdict as long as a plausible reading of the record supports the jury's finding of a single conspiracy.  Perez-Ruiz, 353 F.3d at 7. With these principles in mind, we turn to the task at hand.

A conspiracy is an agreement between two or more persons, including the defendant, to commit a particular crime.  United States v. Moran, 984 F.2d 1299, 1302 (1st Cir. 1993); United States v. Echeverri, 982 F.2d 675, 679 (1st Cir. 1993).  To determine whether a single agreement existed between a defendant and his coconspirators, courts consider the totality of the circumstances, paying particular heed to factors such as the existence of a common goal, evidence of interdependence among the participants, and the degree to which their roles overlap.  United States v. Portela, 167 F.3d 687, 695 (1st Cir. 1999).  The test is a pragmatic one; the

proof need not show that each conspirator knew of all the others, nor that the group remained intact throughout the duration of the enterprise.  United States v. Soto-Benίquez, 356 F.3d 1, 19 (1st Cir. 2003); United States v. Boylan, 898 F.2d 230, 242 (1st Cir. 1990).

In this case, the appellant concedes that the evidence, construed in the light most agreeable to the government, supports a finding that he and his kinfolk (alleged to be coconspirators) shared the common practice and goal of selling drugs for profit. He argues, however, that because Joey's activities were conducted in a different time frame than his sisters' activities, no single overarching conspiracy existed.  In the appellant's estimation, the most that the government proved is that he and Joey conspired to distribute narcotics from 1996 to 1998, and that the subsequent drug-trafficking activity involving Kristin and Brenda Sue was a wholly separate affair.

The appellant's attempt to compartmentalize his activities and carve out separate conspiracies fails.  The record, read most favorably to the prosecution, David, 940 F.2d at 732, contains evidence that is more than adequate to sustain the verdict. A number of drug users testified that they bought cocaine from the appellant on a continuing basis (i.e., throughout the five-year time span described in the indictment).  These individuals testified to a pattern and practice:  from time to

time, they would receive drugs from one of the appellant's children or other sales agents and later pay the appellant himself for the purchase. Joey, Kristin, and Brenda Sue each admitted that he or she peddled cocaine for the appellant, and the evidence suggested that each of them knew that other individuals, including his or her siblings, also toiled as sales agents for the appellant.

Although the cast of characters changed over time, the modus operandi remained constant. The testimony indicated, for example, that one supplier, Stephanie Davis, furnished drugs to the enterprise from 1996 to 2001. Davis dealt indiscriminately with Joey, Kristin, and Brenda Sue (as internuncios). The purchases from Davis invariably were financed by the appellant and, once procured, the raw drugs invariably were delivered to him so that he could dilute, cut, and package them into smaller quantities suitable for retail sale. The drugs then were sold at uniform prices, set by the appellant, and each purveyor collected a "commission" for sales that he or she effectuated. Contraband received from other suppliers was handled in much the same fashion. This pattern and practice bespeaks a single, continuing operation.

Despite the appellant's self-serving claim to the contrary, there is no significantly probative evidence that Joey's arrest and incarceration disrupted the conspiracy's operations in any material respect. Joey himself testified that the appellant promised him a share of the profits from the ongoing drug-

trafficking business while he was in prison — a fact that indicates (or so the jury reasonably could have thought) that the enterprise survived his detention. At any rate, Joey was, from aught that appears, a fungible cog in the enduring wheel. Kristin testified that she began to sell more cocaine after Joey's arrest (partially to help defray the unanticipated costs associated with Joey's defense) and the jury reasonably could have inferred that Brenda Sue's recruitment (she joined the conspiracy in 2000) was part and parcel of the same strategy. Acting on the appellant's instructions, the sisters endeavored to promote and maintain the success of the enterprise in spite of Joey's immurement.

From this and other evidence, a rational jury sensibly could have found — as this jury apparently did — interdependence and overlap among the Beeler siblings. More importantly, a rational jury sensibly could have found interdependence and overlap between the appellant and his progeny. The appellant himself was the linchpin that held the conspiracy together through its different phases. He controlled the wholesale purchases of narcotics, fronted the needed financing, readied the product for resale, and shaped the profit stream by setting the prices. His pervasive involvement fully satisfied the overlap requirement. See Portela, 167 F.3d at 695.

That ends this aspect of the matter.[1]  See, e.g., Soto-Beníquez, 356 F.3d at 18-19 (describing circumstances in which a defendant will be held to have maintained membership in a single overarching conspiracy); United States v. Rivera-Ruiz, 244 F.3d 263, 268-70 (1st Cir. 2002) (similar).  There was no variance.

## III.  MISJOINDER AND SEVERANCE

Certain counts in the indictment focused on the appellant's alleged involvement in the manufacture and deployment of a homemade pipe bomb.  Count 31 charged the appellant with malicious damage to a vehicle through the use of explosive materials in violation of 18 U.S.C. § 844(i); count 32 charged him with possession of an unregistered destructive device in violation of 26 U.S.C. §§ 5841 and 5861(d); and count 33 charged him with possession of a destructive device in connection with a drug-trafficking offense in violation of 18 U.S.C. § 924(c).  The appellant complains that these charges were improperly joined with the drug-trafficking counts.  In a related vein, he complains that Judge Carter improvidently denied his motion to sever these purportedly dissimilar charges.  Neither plaint is compelling.

Although the indictment charged the appellant with engaging in a long-running conspiracy, the multitude of "specific

---

[1]Because we conclude that a rational jury could have found that the appellant participated in the charged conspiracy throughout the period in question, we need not inquire into the prejudice prong of the variance analysis. See Perez-Ruiz, 353 F.3d at 7.

-10-

offense" counts related to cocaine sales in the last quarter of 2001. The indictment also charged the appellant, in the same time frame, with involving a minor (Brenda Sue) in drug-trafficking operations. The government's evidence about illicit activities in 2001 was very potent. It included taped telephone conversations, the corroborating testimony of several customers, drug residue and paraphernalia seized during two warrant-backed searches, and the turncoat testimony of two cooperating coconspirators (Kristin and Brenda Sue) who were active in that time frame.

The pipe bomb charges arose out of earlier events, and the appellant characterizes the government's evidence as much weaker. The case for the earlier period was based largely on the testimony of other participants (most prominently, Joey Beeler). This testimony indicated that, at one point in mid-1997, the appellant's supplier, Stephanie Davis, ran out of inventory. The appellant gave Joey funds to purchase cocaine elsewhere. Joey approached Carol Ann Dorney, who took the money with the understanding that she would procure cocaine from her nephew, Patrick Dorney. Carol Ann returned with a package of white powder. Joey soon discovered that the powder was crushed Tylenol. Despite his immediate protest, Patrick refused to return the funds.

When the appellant learned that Joey had been hoodwinked and had lost the front money, he vowed to retaliate. He and Joey began with small acts of retribution (e.g., Joey cut Carol Ann's

telephone line and put a stink bomb in her hallway). This petty harassment did not bring about a refund, so father and son constructed a pipe bomb, intending that it be used to frighten Patrick.

Patrick proved to be an elusive target. Not having learned his lesson, Joey trusted Carol Ann once again. She told him that Patrick's girlfriend was Diedre Nickerson and directed him to an address in Yarmouth, Maine. On the night of July 25, 1997, Joey and two companions proceeded to that address, found a car that they believed (mistakenly) belonged to Diedre Nickerson, and bombed it.

Against this factual backdrop, we turn to the appellant's asseverations. We take them one by one.

## A. **Misjoinder**.

The misjoinder claim is raised for the first time on appeal. Consequently, we review it only for plain error. United States v. Taylor, 54 F.3d 967, 972-73 (1st Cir. 1995). To establish plain error, an appellant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). The appellant cannot come close to making this showing.

A plausible basis for the joinder of multiple counts ordinarily should be discernible from the face of the indictment. United States v. Natanel, 938 F.2d 302, 306 (1st Cir. 1991). The appellant points to the indictment's description of the charges and vouchsafes that the drug-trafficking and pipe bomb counts are simply too dissimilar to be joined. But similarity of charges is not the sole criterion for joinder. The Criminal Rules allow joinder not only of offenses that "are of the same or similar character," but also of offenses that "are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).

Given the reach of this standard, the key datum here is that the indictment charged the appellant and his confederates with having used the pipe bomb during and in furtherance of the drug-trafficking conspiracy. The narcotics sales and the pipe bomb charges were thus linked as elements of a common scheme or plan. The counts were, therefore, properly joined. See Natanel, 938 F.2d at 307 (describing as "settled" the rule that a conspiracy count constitutes a sufficient link to justify joinder of offenses and defendants).

## B. Severance.

Counts that are properly joined need not always be tried together. Even if offenses are properly joined, the Criminal Rules authorize a severance "[i]f the joinder of offenses . . . appears

-13-

to prejudice a defendant." Fed. R. Crim. P. 14(a). Severance on the ground of undue prejudice is a judgment call and, thus, is a matter committed to the trier's informed discretion. United States v. Alosa, 14 F.3d 693, 694-95 (1st Cir. 1994). On appeal, an allegedly aggrieved party must show that the trial court's refusal to sever constituted an abuse of discretion. Id. This usually entails a showing that the failure to sever deprived the defendant of a fair trial. Taylor, 54 F.3d at 974.

Here, the appellant's contention that the district court erred in denying his motion for severance is unconvincing. First, he argues that evidence of drug trafficking that occurred in 2001 should not have been admissible in a trial of charges relating to the 1997 pipe bombing because the two sets of events were separated by the passage of four years. This argument is a non-starter.

All the offenses (those relating to narcotics and those relating to explosives) were charged as overt acts in furtherance of the conspiracy described in the indictment. In addition, the bombing — as the government views the case — was brought about by a desire to avenge a drug deal gone sour. This motive connected the two sets of offenses in an unusually intimate way. Under these circumstances, no risk of unfairly prejudicial spillover existed because evidence as to each group of offenses would have been admissible in a trial of the other. See United States v. Edgar, 82 F.3d 499, 504-05 (1st Cir. 1996) (explaining that no prejudice

exists where the same evidence would be admissible even if counts were severed); Taylor, 54 F.3d at 974 n.5 (similar).

The appellant has a fallback position, which centers on his claim that the failure to sever limited his ability to testify as to the pipe bomb incident. Had he taken the witness stand to deny the pipe bomb charges, his thesis suggests, he would have run the risk of incriminating himself with respect to the drug-trafficking charges. This claim lacks traction.

We have grappled with this type of situation before. "[W]hile the courts zealously guard a defendant's Fifth Amendment right not to testify at all, the case law is less protective of a defendant's right to testify selectively . . . ." Alosa, 14 F.3d at 695. A defendant seeking a severance for the purpose of testifying on one of several counts must make a threshold showing that he has salient testimony to give anent one count and an articulable need to refrain from giving testimony on the other(s). Id. Carrying the first part of this burden typically requires that the defendant furnish the trial court with a particularized offer of proof limning the testimony that he proposes to give and indicating how it would further his defense. See United States v. Jordan, 112 F.3d 14, 17 (1st Cir. 1997); Alosa, 14 F.3d at 695.

Here, the appellant did not present sufficient facts to the district court (or to us, for that matter) to permit a finding that he had important testimony to offer. Apart from his bald

assertion of innocence as to the pipe bomb counts and an unparticularized claim that the government's witnesses were not credible, his motion offered no hint as to the specific information that his testimony would convey. This sort of empty rhetoric is insufficient to mandate severance on the basis of a perceived need to testify. See Alosa, 14 F.3d at 695 (suggesting that a "credible alibi that only the defendant can supply showing him to have been elsewhere at the time of the crime" would be enough); United States v. Tracy, 989 F.2d 1279, 1283-84 (1st Cir. 1993) (affirming denial of motion to sever when supporting allegations are merely conclusory). Were the law otherwise, severance would be available to a defendant virtually on demand.

To say more on this point would be supererogatory. We hold, without serious question, that the district court did not err either in permitting the thirty-four counts to be joined in a single indictment or in refusing to sever the pipe bomb charges before trial.

## IV. THE INTERSTATE COMMERCE NEXUS

The appellant asks us to overturn his conviction on count 31 of the indictment, which charged him with malicious damage to a vehicle through the use of explosive materials. The statute of conviction criminalizes the conduct of any person who "maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or

personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i). The appellant posits that the government failed to satisfy the statute's jurisdictional element because it did not prove that the bombed vehicle was used in interstate commerce. Since the resolution of this issue involves the application of a rule of law to a clear factual setting, it engenders de novo review. United States v. Pitrone, 115 F.3d 1, 4 (1st Cir. 1997).

Because Congress employed the terminology "used in interstate . . . commerce or in any activity affecting interstate . . . commerce," the Supreme Court has indicated its preference for a "use centered reading" of the statute. Jones v. United States, 529 U.S. 848, 855-56 (2000). Indulging such a reading, the Jones Court concluded that an owner-occupied private dwelling did not have a sufficient nexus to interstate commerce to satisfy the jurisdictional element because the owner was not actively using the property in a way that affected interstate commerce. Id. at 859. By way of contrast, the Court concluded that a building used by the owner as a rental property would have a sufficient connection to interstate commerce because renting a building qualifies as use in an activity affecting interstate commerce. See id. at 853 (discussing the holding in Russell v. United States, 471 U.S. 858 (1985)).

Jones provides guidance for purposes of the instant case. Here, the damaged vehicle was owned by Infiniti Financial Services (a national firm affiliated with the company that manufactures Infiniti automobiles) and leased to Dorothy Nickerson (no relation to Diedre Nickerson). Dorothy used the vehicle strictly for personal purposes, and the appellant asks us to regard that use as determinative. The proper focus, however, should be on the owner's use of the vehicle. The owner, Infiniti Financial Services, leased the car as part of its ongoing commercial activities. Under Jones, this use plainly was in an activity that affects interstate commerce.

This view is reinforced by the decision in United States v. Geiger, 263 F.3d 1034 (9th Cir. 2001). Faced with the application of section 844(i) to a leased truck, the Ninth Circuit drew a comparison to Jones and observed that "[t]o the extent that 'common perception' dictates that a rental apartment is used in the activity of renting real estate, a leased truck surely is 'unquestionably' used in the activity of leasing vehicles." Id. at 1037 (citing Jones, 529 U.S. at 856).

That rationale is applicable in this instance. The leasing market for vehicles, even more than the rental market for apartments, is a national one that materially affects interstate commerce. Thus, by leasing the car to Dorothy Nickerson, Infiniti Financial Services was using it in an activity affecting interstate

-18-

commerce. That satisfies the statutory criterion, regardless of what use Dorothy made of the vehicle. See id. at 1037-38; see also United States v. Viscome, 144 F.3d 1365, 1369 (11th Cir. 1998) (correctly anticipating Jones). We hold, therefore, that the government's proof sufficed to satisfy the jurisdictional element of the statute of conviction.

## V. DOUBLE JEOPARDY

The Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The prophylaxis of the Clause is threefold; it protects a defendant against (i) a second prosecution for the same offense, following an acquittal; (ii) a second prosecution for the same offense, following a conviction; and (iii) multiple punishments for the same offense. N. Carolina v. Pearce, 395 U.S. 711, 717 (1969); United States v. Ortiz-Alarcon, 917 F.2d 651, 653 (1st Cir. 1990). The appellant's final argument implicates the third of these protections.

We need not tarry in these purlieus, as the government, to its credit, confesses error in this case. The basic facts are as follows. The same conduct that was charged as distribution of a controlled substance in six counts of the indictment (counts 3, 4, 7, 9, 12, and 13) was also charged as distribution of a controlled substance within 1,000 feet of a school in six other counts (counts 23 through 28). Because the jury had to find that

-19-

the conduct occurred at all before it could find that it occurred near a school, the first six counts are lesser included offenses of the second six.  See United States v. Palmer, 248 F.3d 569, 570 (7th Cir. 2001) (per curiam), cert. denied, 535 U.S. 1012 (2002).

The rule, required by the Double Jeopardy Clause, is that when one count in an indictment is a lesser included offense of another, duplicative convictions cannot stand.  United States v. Houlihan, 92 F.3d 1271, 1300 (1st Cir. 1996); United States v. Parrilla-Tirado, 22 F.3d 368, 372 (1st Cir. 1994).  Based on this rule, the appellant correctly asserts that the lesser included distribution counts should have been dismissed after the jury verdict was returned.[2]  We therefore vacate the appellant's convictions and sentences on counts 3, 4, 7, 9, 12, and 13.

## VI.  CONCLUSION

We need go no further.  For the reasons elucidated above, we vacate the convictions and sentences on the six enumerated

---

[2]The district court seems to have recognized this reality.  It pointed out at the beginning of trial that because of the overlap between the paired counts, the jury could convict on only one count of any given pair.  The court reiterated this sentiment at the charge conference, informing the parties that if the jury convicted on both a distribution charge and the paired "schoolyard" charge, a judgment of not guilty would be entered with respect to the lesser included distribution offense.  Something got lost in the shuffle, however, and none of the lesser included distribution counts were dismissed.  Moreover, mandatory felony assessments, totaling $600, were imposed at sentencing on those six counts.  The vacation of the sentences wipes out those assessments.

counts; affirm the convictions and sentences on the remaining counts; and remand for entry of an amended judgment.

**<u>Affirmed in part; vacated in part; remanded</u>**.