**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dale R. FRELAND, Defendant–Appellant.**

**No. 97–1710.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1997.

Decided April 22, 1998.

John W. Vaudreuil (argued), Peggy A. Lautenschlager, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Elizabeth Cavendish–Sosinski (argued), Pewaukee, WI, for Defendant–Appellant.

Before WOOD, Jr., RIPPLE and DIANE P. WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Dale Freland was indicted by a federal grand jury on three counts relating to two armed bank robberies which occurred near Chippewa Falls, Wisconsin, in 1993. Count I of the indictment charged Freland with armed robbery of the Lafayette branch of the Northwestern Bank of Chippewa Falls on January 14, 1993, in violation of 18 U.S.C. § 2113(a) and (d). Count II charged Freland with the July 23, 1993 attempted armed robbery of the Farmers & Merchants State Bank in Stanley, Wisconsin. Count III charged Freland with the use and carrying of a firearm during the July 23 attempted bank robbery in violation of 18 U.S.C. § 924(c)(1). Freland pled not guilty to all charges.

The case was tried before a jury in November 1996. The proceeding ended in a mistrial when the jury was unable to reach a unanimous verdict. The case was retried in January 1997. Prior to the second trial, Freland's attorney filed a motion to sever Count I from Counts II and III. The magistrate judge denied the motion for severance. The severance issue was raised again at the final pre-trial conference. After hearing oral arguments on the issue, the magistrate again refused to sever the counts.

Freland elected to proceed pro se at trial, and the court appointed an attorney to serve as standby counsel. At the conclusion of the second trial, the jury found Freland guilty on all counts. Freland filed a timely appeal, raising two issues. First, Freland contends that the evidence was insufficient to convict him on Counts II and III. Secondly, Freland argues that the district court erred in failing to sever Counts II and III from Count I.

## Background

The Northwestern Bank of Chippewa Falls operates a branch bank in Lafayette, Wisconsin. In January 1993, the bank was constructing a new building for the Lafayette branch. As a result, the branch was temporarily operating out of a trailer facility located in the parking lot of a strip mall. This temporary facility did not have a vault, and so the money was transported daily by courier back and forth between the facility and

the main branch. The money was placed in metal cash boxes to be transported, and the couriers used bank trucks.

· On January 14, 1993, around 5:00 p.m., the courier arrived at the temporary facility to pick up the cash and transport it to the main branch for the evening. A teller loaded the money into two metal cash boxes, and, accompanied by the courier, she took the boxes out of the bank and placed them in the bank truck. The teller returned to the temporary facility, and the courier began to walk around to the driver's side of the truck. As he did so, he was confronted by a masked man who pointed a gun at him. The man demanded that the courier give him the keys to the truck. When the courier obeyed, the man took the keys and drove off in the bank truck. An auditor determined that the cash boxes contained $35,659.

The Farmers & Merchants State Bank operates a main branch and a drive-up facility in Stanley, Wisconsin. At the end of each business day, an employee from the drive-up facility transports the daily work and receipts from the drive-up to the main branch and deposits them in the night depository. On July 23, 1993, at approximately 8:00 p.m., bank teller Donna Endru was transporting the work and receipts in two bank bags. As she prepared to place the bags into the night depository at the main branch, a two-door, brown El Camino-type car pulled up close to the curb near her. The male driver was wearing a scarf over his face. He spoke to Endru through the open passenger window and told her to "toss it in here." She refused. At that point, she heard a pop and saw a flash of light coming from what looked like a small silver gun in the man's hand. The car then sped off.

At Freland's trial, the government presented testimony from Jerry Van Cannon, a convicted felon, who first met Freland when they both were incarcerated in an Iowa penitentiary. According to Van Cannon, Freland contacted him in December 1992 and asked him to come to Wisconsin. Van Cannon testified that after he arrived in Wisconsin, he and Freland discussed plans for the two bank robberies and "cased" both the Lafayette and the Stanley banks. Van Cannon

admitted his participation in the Lafayette robbery. Van Cannon testified that prior to January 14, he stole a pizza delivery car and a truck to use in the robbery. According to Van Cannon, the truck was hidden in Freland's garage until the day ·of the robbery.

Van Cannon testified that on January 14, he and Freland met at Freland's girlfriend Lisa Fair's trailer and prepared their guns and masks for the Lafayette robbery. Van Cannon testified that he and Freland then went to the Lafayette bank. Van Cannon was driving the stolen truck and Freland was driving his Ford Thunderbird. Van Cannon accosted the courier and drove off in the bank truck, leaving the stolen truck in the bank parking lot. Freland followed behind in the Thunderbird. Once they were out in the country, Van Cannon abandoned the bank truck, taking the cash boxes and getting into Freland's Thunderbird. The two returned to Fair's trailer, where they divided the cash and discussed the robbery with Lisa Fair and Junior Creason. Van Cannon testified that Freland asked him to participate in the Stanley robbery that same day, but Van Cannon declined and left the Chippewa Falls area. Van Cannon testified that in March 1995, he had a brief encounter with Freland while both men were again incarcerated in the same prison in Iowa. At that time, Van Cannon stated that Freland told him that he had done the Stanley robbery.

The government also provided testimony from Vernon "Junior" Creason, another of Freland's associates. Creason testified that Freland had asked him to assist in the Lafayette robbery, but that he had declined. Creason stated that he was present during discussions in which Freland and Van Cannon laid out their plans for the Lafayette robbery. After the Lafayette robbery, Creason met with Freland and Van Cannon at Lisa Fair's trailer while they split up the stolen money and discussed the robbery.

Creason further testified that, in early July 1993, Freland talked to him about robbing the bank in Stanley. Creason stated that Freland took him to the bank in Stanley, described his plan to "hit" the bank employee as she transported the daily receipts, and showed him the planned escape route. Ac-

cording to Creason's testimony, Freland tried to recruit Creason to participate in the Stanley robbery but Creason refused. Creason testified that Freland had told him that he and another man had stolen an El Camino to use in the robbery. Creason testified that he saw Freland on the night after the attempted robbery in Stanley and that Freland described the attempted robbery to him in detail.

Freland took the stand at trial and was questioned by his stand-by counsel. He denied discussing bank robberies with either Creason or Van Cannon and denied involvement in either of the robberies. He testified that, at the time of the Lafayette bank robbery, his Thunderbird was up on blocks in his one-car garage and he was hitchhiking his way to California. Freland testified that he did not remember where he was at the time of the Stanley robbery. He admitted that he may have test-driven the El Camino but denied stealing it.

## Analysis

### A. Sufficiency of the Evidence

■ While Freland concedes that an attempted robbery in which a firearm was used occurred at the Farmers & Merchants State Bank in Stanley, Wisconsin, he contends that the evidence was insufficient to prove beyond a reasonable doubt that he was the individual who committed the attempted robbery. As a result, Freland asks this court to reverse his convictions on Counts II and III. Freland bears a heavy burden in raising this claim. *See United States v. Agostino*, 132 F.3d 1183, 1192 (7th Cir.1997). This court must view all of the evidence in the light most favorable to the government. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). While viewing the evidence as required, we must affirm the conviction as long as "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* We will overturn the verdict only if the record contains "no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Agostino*, 132 F.3d at 1192.

■ Freland asserts that evidence linking him to the Stanley bank robbery is "barely present on the record, if at all." In making this assertion, Freland ignores the testimony of Vernon Creason and Jerry Van Cannon. Freland attempts to discredit Creason and Van Cannon's testimony, dismissing it as testimony of "convicted felons." However, credibility determinations are for the jury, and on appeal, this court must accept evidence as long as it is not so inconsistent or improbable on its face that no reasonable factfinder could accept it. *United States v. Saunders*, 973 F.2d 1354, 1359 (7th Cir.1992). Under this standard, the Creason and Van Cannon testimony represents a substantial link between Freland and the Stanley robbery.

In addition to the testimony of Creason and Van Cannon, the government produced testimony from Donna Endru, two bystanders, the owner of the El Camino, and Freland's girlfriend, Lisa Fair, linking Freland to the Stanley robbery. Viewed in the light most favorable to the government, there clearly was sufficient evidence such that a rational jury could have convicted Freland on Counts II and III. Freland's claim of insufficient evidence fails.

### B. Severance

■ Freland contends that he was impermissibly prejudiced by the district court's failure to sever Count I from Counts II and III. Rule 8 of the Federal Rules of Criminal Procedure permits joinder of offenses if, among other reasons, the offenses are "of the same or similar character." Fed.R.Crim.P. 8(a). Rule 8 should be broadly construed in order to increase judicial efficiency and to avoid costly and duplicative trials. *United States v. Archer*, 843 F.2d 1019, 1021 (7th Cir.1988). Clearly, in the present case, joinder was proper under Rule 8. However, Freland argues that even if the offenses were properly joined under Rule 8, the district court erred in failing to sever the counts pursuant to Rule 14. Rule 14 provides for severance of offenses in cases in which a party is prejudiced by joinder. Fed. R.Crim.P. 14. The decision to sever under Rule 14 is left to the sound discretion of the

trial court. *Zafiro v. United States,* 506 U.S. 534, 541, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). We review for abuse of discretion. *United States v. Turner,* 93 F.3d 276, 283 (7th Cir.1996). Freland must show that he was unable to obtain a fair trial without a severance. *Id.*

■ Freland's first argument for severance is closely related to his sufficiency of the evidence claim. Freland argues that the government would have been unable to get a conviction on Counts II and III without the benefit of the overwhelming evidence introduced on Count I. However, it is clear from our discussion of Freland's sufficiency of the evidence claim that there was ample evidence to convict him on Counts II and III without the benefit of any alleged "spill-over" evidence from Count I.

Freland also contends that the joinder created an unnecessary risk of juror confusion; however, the trial took just three days and the evidence presented was not complex. Freland's sole defense was that he was not the individual who committed the robberies, so the jury did not have to "grapple with the application of widely variant governing legal principles." *See* United States v. Coleman, 22 F.3d 126, 135 (7th Cir.1994).

Freland argues that the joinder created an improper "criminal disposition" inference which may have led the jury to believe that Freland had a propensity to commit bank robberies. While this is an important issue, in the present case we do not believe that Freland was deprived of a fair trial. As discussed above, there was sufficient evidence to support convictions on all three counts. Additionally, the court properly instructed the jury that "[e]ach count and evidence relating to it should be considered separately, and a separate verdict should be returned as to each count. Your verdict of guilty or not guilty of an offense charged in one count should not control your decision as to any other count." The ability of a jury to follow instructions is instrumental to our theory of trial. *United States v. Donaldson,* 978 F.2d 381, 392 (7th Cir.1992). In the present case, the trial was not complex, and we believe that the jury was able to follow the district court's limiting instruction. Freland

fails to show that he was prejudiced by an improper inference of criminal disposition.

■ Freland raises a final argument for severance, arguing that he was prejudiced by the fact that the joinder forced him to testify at trial as to Counts II and III due to his desire to testify as to Count I. As Freland notes, "severance is not mandatory every time a defendant wishes to testify to one charge but to remain silent on another." *Archer,* 843 F.2d at 1022. However, severance is necessary if the defendant makes a convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying as to the other counts. *Id.*

Freland asserts that he had important testimony to give as to Count I, specifically the testimony that, at the time of the first bank robbery, his Ford Thunderbird had a broken fly wheel and was up on blocks in his one-car garage. Freland contends that this testimony was vital to his defense on Count I, since it contradicted Van Cannon's testimony that the car was involved in the first robbery and that the stolen truck was stored in Freland's garage. Freland concedes that another witness testified as to the condition of the Thunderbird at that time, but asserts that the other witness was weak and needed bolstering on this important issue. Additionally, Freland contends that the evidence presented against him on Counts II and III was so weak that the government would not have been able to get a conviction on these counts without his testimony.

This court has held that a defendant "fails to make a convincing demonstration of a 'strong need to refrain from testifying' on particular counts when '[w]ithout [the defendant's] testimony, the government offered sufficient evidence to support the jury's verdict' on these counts." *United States v. Balzano,* 916 F.2d 1273, 1283 (7th Cir.1990) (citing *Archer,* 843 F.2d at 1022). As discussed above, in the present case the government presented sufficient evidence to convict Freland on Counts II and III without Freland's testimony. Furthermore, while Freland's testimony with regard to the Thunderbird contradicts Van Cannon on one point, Fre-

land has failed to demonstrate that this testimony was important enough to compel a severance. Much of Van Cannon's testimony was corroborated by other witnesses and by physical evidence, and another witness testified as to the status of the Thunderbird. Given the strength of the government's case and the debatable significance of Freland's testimony, we conclude that the district court did not abuse its discretion in refusing to grant a severance.

## Conclusion

For these reasons, Freland's convictions are AFFIRMED.