165 F.3d 33
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Sean R. LUCUS, Defendant-Appellant.
 No. 97-2719.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 17, 1998.
Decided Nov. 30, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois. No. 97 CR 20009. Harold A. Baker, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. JOHN L. COFFEY, Hon. JOEL M. FLAUM, Circuit Judges.
 
 ORDER
 
 1
 A jury convicted Sean R. Lucus of attempted possession of cannabis and cocaine with intent to distribute, as a result of his receipt of a large package containing marijuana and cocaine. On appeal he contends that the evidence that he knew of the drugs in the package was insufficient to support a conviction. We affirm.
 
 
 2
 On February 11, 1997, law enforcement authorities in Tucson, Arizona notified the Sheriff's Department for Kankakee County, Illinois to be on the lookout for a Federal Express package scheduled for overnight delivery to an address in Cabery, a small town in Kankakee County. The package, a 30-pound box, alerted the Arizona officials' suspicions because the sender's address was fictitious. When the package arrived the following day, law enforcement agents obtained a warrant to search it and found 9,000 grams of marijuana and 975 grams of cocaine inside. The drugs had a street value of $240,000. The agents resealed the package and prepared to deliver it.
 
 
 3
 The package was addressed to "Sean" at MARAK, Inc., 103 N. State Street, Cabery, Illinois and was supposed to be delivered by 10:30 a.m. At about 1:00 p.m., agents in a white unmarked van took the package to the address listed, which was a commercial garage-like structure with a handwritten sign reading "MARAK, Inc." Agent Douglas, posing as a Federal Express driver, took the package to the door, and Sean Lucus, the defendant, answered the door. At this point, the parties' accounts diverge.
 
 
 4
 Agent Douglas testified that Lucus said he had been waiting for the package and asked why it was late. Looking at the unmarked van, Lucus also asked why the van had no Federal Express markings. Throughout the encounter, Lucus appeared nervous and suspicious, and he appeared relieved when the agent left after delivering the package. None of this testimony appears in Agent Douglas's reports.
 
 
 5
 Lucus testified that he had been at the garage all morning working with his father, and that his father had left to run errands when the package was delivered. Lucus stated that the agent asked him if he was expecting a package, and that Lucus answered "no." Lucus did not know what was in the package and had not been expecting any delivery. Lucus then asked the agent if he needed to sign anything, and the agent said no, explaining that it had already been scanned. The agent then handed him a receipt and left, telling him to have a nice day.
 
 
 6
 Shortly thereafter, Lucus left the garage and drove a block and a half to a restaurant where he had lunch. Upon leaving the restaurant, Lucus looked directly at some agents who were conducting surveillance of Lucus, got into his vehicle and sped off. (Lucus later testified that he was nervous and looked around because he was driving on a suspended license.) The agents gave chase, and the vehicles reached 65 miles per hour. Lucus pulled over, and the agents arrested him. After being read Miranda warnings, Lucus said he understood them and would talk to the agents. Lucus denied knowing what was in the package. The agents told him that if he wanted to cooperate, time was of the essence and he must make a decision soon. The government states that Lucus said that he "wanted to think long and hard about what he wanted to do or say"; Lucus denies this. Lucus testified that the agents promised him thirty years in prison unless he cooperated.
 
 
 7
 Lucus then consented to a search of the garage at 103 North State Street. The package was still unopened when Lucus and the agents arrived there. The agents interviewed Lucus while the building was searched. The building contained only an office, a bathroom, storage rooms and an area for parking cars. The office contained sheets of insulation, a knife suitable for cutting the insulation, and three boxes of Ziploc bags.
 
 
 8
 At trial, the parties offered conflicting testimony on several key points. The parties disputed whether Lucus told the agents that he had been waiting for the package since 9:00 a.m., or merely that he had been at the garage since 9:00 a.m. The agents testified that when they asked Lucus whether he knew if drugs were in the package, he said yes: Lucus testified that he answered yes because by then the agents had told him that drugs were in the package. Moreover, at trial Lucus offered an innocent explanation for how someone might have obtained his name and the address of his father's garage, which were on the package. Lucus testified that a week prior to the package delivery, he had met someone named Bob at a bar, conversed with him and shot pool with him. (Several witnesses corroborated this meeting.) Upon hearing of Lucus's father's garage building, Bob asked if he could work on the engine of his truck there. Lucus agreed to ask his father, who okayed the arrangement so long as Bob paid him and used his own tools. A few days later, Lucus saw Bob in the bar again and told him the arrangement was okay. Bob asked if he could have some engine parts delivered to the garage, and Lucus assented, giving Bob his name and the address of his father's garage. The implication is that Bob used Lucus's name and the garage address as a place to send drugs, without Lucus's knowledge. One witness testified that Bob was not at the bar on the night Lucus claimed to given Bob his address. Lucus never mentioned his conversations with Bob to the agents.
 
 
 9
 Lucus's parents, Roger and Mary, also testified at trial, presenting an innocent explanation for the Ziploc bags in the office of the garage and explaining the name MARAK, which Roger had invented. Lucus's first trial resulted in a hung jury and a mistrial. On retrial, a second jury found Lucus guilty of attempted possession of cannabis and cocaine with intent to distribute. Lucus was sentenced to 78 months of imprisonment and four years of supervised release. He appeals, contending that the government's evidence was insufficient to convict him.
 
 
 10
 When reviewing a sufficiency of the evidence challenge, this court considers the evidence in the light most favorable to the government and defers to the credibility determinations of the trier of fact. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); United States v. Cueto, 151 F.3d 620, 630 (7th Cir.1998). We will overturn a guilty verdict only if the record contains no evidence from which the jury could find guilt beyond a reasonable doubt. United States v. Freland, 141 F.3d 1223, 1226 (7th Cir.1998).
 
 
 11
 Lucus argues on appeal that the government produced no evidence showing beyond a reasonable doubt that he possessed the drugs knowingly. The thrust of his argument is that there was no direct evidence of his mental state other than his own testimony, in which he stated that he did not know that the package contained drugs until the agents told him so. Therefore, Lucus concludes, the government has not proved its case beyond a reasonable doubt, because it presented no evidence that he had the requisite mens rea.[1]
 
 
 12
 The problem with this argument is that it interprets "evidence" as comprising direct evidence only. But it is hornbook law that the government may prove its case through circumstantial evidence that invites the trier of fact to draw inferences, so long as those inferences are reasonable. United States v. Moore, 115 F.3d 1348, 1364 (7th Cir.1997) (crimes may be proved entirely through circumstantial evidence); United States v. Shorter, 54 F.3d 1248, 1254 (7th Cir.1995) ("we allow circumstantial evidence to support the jury's verdict"); Magana, 118 F.3d at 1201 ("While common sense is no substitute for evidence, ... common sense should be used to evaluate what reasonably may be inferred from circumstantial evidence.") (internal quotation marks and citations omitted). Here, the government produced ample evidence casting doubt on Lucus' testimony that he did not know that the package contained drugs. Agent Douglas testified that Lucus stated that he had been waiting for the package, appeared nervous and suspicious, and questioned Agent Douglas about the delay in delivery and the lack of Federal Express markings on the van. When Lucus noticed the surveillance team upon leaving the restaurant after lunch, he sped away. In addition, the office in the garage contained three boxes of Ziploc bags, commonly used for repackaging drugs for sale. Finally, Lucus did not tell the agents about his supposed conversations with Bob--his innocent explanation for why he might have expected a package at the garage--suggesting that the conversations may have been a later invention. This circumstantial evidence of Lucus's mens rea was sufficient to support a jury finding of guilt beyond a reasonable doubt.
 
 
 13
 Lucus's denial of any knowledge of the drugs, and his defense strategy of introducing evidence of innocent explanations to counter the government's evidence created a credibility contest. Weighing the credibility of witnesses and resolving conflicting explanations are tasks for the jury, not the appellate court. Freland, 141 F.3d at 1226; Moore, 115 F.3d at 1364; Shorter, 54 F.3d at 1254; see also United States v. Navarrete, 125 F.3d 559, 562 (7th Cir.1997) ("the factfinder is free to weigh the evidence and choose between inculpatory and exculpatory interpretations"). A court will not disturb the jury's determination of these issues so long as the evidence upon which they are based "is not so inconsistent or improbable on its face that no reasonable factfinder could accept it." Freland, 141 F.3d at 1226. Here, although the conflicting explanations apparently were enough to deadlock the first jury, the second jury's credibility determinations in favor of the government are reasonable based upon the evidence presented, and may not be set aside. Lucus's insufficiency challenge is itself insufficient to meet the high hurdles posed by the standard of review, and the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The elements of possession with intent to distribute are (1) knowingly or intentionally possessing a controlled substance; (2) with the intent to distribute it; and (3) knowing that the substance possessed was, in fact, a controlled substance. United States v. Magana, 118 F.3d 1173, 1199 (7th Cir.1997). Lucus challenges the sufficiency of the evidence only as to the mens rea component of the crime. Further, in order to prove attempted possession (the charge contained in the indictment), the government must show that Lucus had the specific intent to commit the underlying offense, and that he took a substantial step toward its completion. Id. at 1198. Once again, Lucus appears to be challenging the mens rea element