**UNITED STATES of America,
Plaintiff,**

v.

**Jason BEST, et al. Defendants.**

**No. 2:00–CR–171.**

United States District Court,
N.D. Indiana,
Hammond Division.

May 28, 2002.

924

Gary S. Germann, Clark W. Holesinger, Portage, IN, Thomas W. Vanes, Merrill-ville, IN, for Defendants.

## ORDER

LOZANO, District Judge.

This matter is before the Court on Defendant's Memorandum of Law In Support of Motion to Sever, filed September 13, 2001 ("Motion to Sever").[1] After reviewing the written submissions of Defendant and the Government,[2] and after considering the issues during hearings on March 7, 2002, and May 8, 2002, for the reasons set forth below, Defendant's Motion to Sever is **GRANTED**.

### BACKGROUND

The superseding indictment charges Defendant with nine separate counts, including, importantly, a violation of 18 U.S.C. section 924(j): firearms murder in furtherance of a drug trafficking crime (Count 10).[3] The Government has announced that

---

1. Defendant apparently did not file a separate pleading styled "Motion to Sever."

2. The Government filed its response to Defendant's motion on September 25, 2001. Defendant replied in support of his motion on February 15, 2002. After the May 8, 2002, hearing on the motion, the Government filed its Supplemental Response to Defendant's Motion to Sever on May 10, 2002. Then, on May 13, 2002, the Government filed its Second Supplemental Response to Defendant's Motion to Sever. Finally, on May 17, 2002, Defendant filed his: (1) Supplement to Defendant's Motion to Sever; and (2) Second Supplement to Defendant's Motion to Sever, both of which include Defendant's signature and the signature of one of his lawyers.

3. Notably, Count 10 also explicitly "charge[s]" Defendant with a violation of 18 U.S.C. section 924(c)(1)—use of a firearm in furtherance of a drug trafficking crime. Although proof of a violation of 18 U.S.C. section 924(c)(1) and proof of a drug trafficking crime are predicate offenses that must be alleged and proven in order to secure a con-

viction under 18 U.S.C. section 924(j), the Government need not actually *charge* Defendant with those predicate offenses in order to convict him under 18 U.S.C. section 924(j). *See United States v. Anderson*, 59 F.3d 1323, 1336 (D.C.Cir.1995) ("The commission of a drug-trafficking crime is therefore one element of a § 924(c)(1) violation, just as the use of a gun is another. As long as the Government proves both elements (and the requisite intent) beyond a reasonable doubt, the defendant can be convicted under § 924(c)(1), regardless of whether he is also convicted of (or for that matter even charged with) the related drug-trafficking crime.") (Ginsburg, J., dissenting). As such, Count 10 needlessly "charge[s]" Defendant with a violation of 18 U.S.C. section 924(c)(1).

More importantly, however, the Court is concerned that because Count 10 charges violations of 18 U.S.C. section 924(j) *and* 18 U.S.C. section 924(c)(1), the count may be duplicitous. *United States v. Hood*, 210 F.3d 660, 663 (6th Cir.2000) ("By collapsing separate offenses into a single count, duplicitous indictments thereby prevent the jury from

it will seek the death penalty upon securing a conviction under Count 10. *See* Notice of Intent to Seek the Death Penalty, filed October 10, 2001. As such, this is now a capital case under 18 U.S.C. section 3591 *et. seq.* In addition to the capital count, the superseding indictment charges Defendant with being a felon in possession of a firearm on the day of the murder (Count 11); conspiracy to possess and distribute crack and marijuana over a 25–month period (Count 1); maintaining three different crack houses (Counts 6, 7, 8, and 9); and possessing crack with the intent to distribute it (Counts 2 and 3). This matter is set for a 2–week jury trial on July 15, 2002.

Citing Rules 8(a) and 14 of the Federal Rules of Criminal Procedure, Defendant asks this Court to sever the drug-related counts (1, 2, 3, 6, 7, 8, and 9) from the murder-related counts (10 and 11). Through his pleadings and during arguments before the Court, Defendant makes three main arguments in support of his severance request. First, Defendant asserts that the drug and murder-related charges are improperly joined in one indictment because the two sets of charges are neither the "same in character" nor "based on the same acts or transactions." Def.'s Mem. in Supp. of Mot. to Sever at 2–3 (relying on portions of Fed.R.Crim.P. 8(a)). Second, Defendant maintains that the two sets of charges should be severed pursuant to Rule 14's prohibition on prejudicial joinder. In the absence of severance, Defendant notes that he will be unable to testify regarding the murder-related counts while remaining silent and putting the Government to its proof on the drug-related counts. Def.'s Mem. at 4–5. Defendant points to his Alibi Defense, filed July 5, 2001, to demonstrate that he has important testimony to give regarding the murder-related counts. Def.'s Reply In Supp. of Mot. to Sever at 4. Specifically, Defendant plans to testify that, at the time of the murder, he was at a Gary-area hospital with Yoshida Carter and his son, Jaylon Carter. Def.'s Reply at 4. With respect to the drug counts, Defendant anticipates "voluminous, contradictory, and confusing" testimony from Government witnesses, many of whom, he asserts, "have made deals and entered into pleas." Def.'s Reply at 3. Defendant believes that by remaining silent on those charges he will avoid "adding to the confusion" and may escape conviction. Def.'s Reply at 4. Third, Defendant argues that any evidence of his guilt on the drug-related charges may "spillover" onto

---

convicting on one offense and acquitting on another."). The Court is aware of the Government's position that 18 U.S.C. section 924(j) is merely a "sentencing [factor]" for a violation of 18 U.S.C. section 924(c)(1) and, therefore, is not a separate offense. The Court believes that the Supreme Court's recent decisions distinguishing between "offense elements" and "sentencing factors" strongly suggest that the Government is mistaken in asserting that section 924(j) is a mere sentencing factor. *See Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Castillo v. United States,* 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000); *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); and *Almenda-rez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). In any event, the Court recognizes that Defendant's agreement with the Government's position on this issue may constitute a waiver of any duplicity arguments on appeal. *See* Defendant's Memorandum Regarding Count 10, filed May 17, 2002. Unfortunately, the substantive rights implicated by duplicity may be unwaivable. *United States v. Adesida,* 129 F.3d 846, 849 (6th Cir.1997) (because duplicity is more than a mere technicality, defendant did not waive his right to raise the issue on appeal simply by failing to object to duplicitous indictment before trial). The Court reserves the right to resolve this issue at a later date.

the murder-related charges during the jury's deliberations.[4] Def.'s Reply at 4.

Not surprisingly, the Government opposes Defendant's attempt to split this case in two. Initially, the Government notes that Defendant's analysis of joinder under Rule 8(a) fails to acknowledge that Rule 8(a) also provides that charges which are "based . . . on two or more acts or transactions connected together or constituting parts of a common scheme or plan" may be properly joined in one indictment. Gov't Resp. at 2. Noting that proof of a drug trafficking crime is an offense element for a conviction under 18 U.S.C. section 924(j), the Government contends that the face of the indictment, alone, demonstrates that the drug and murder-related counts are properly joined under Rule 8(a). Gov't Resp. at 3. Next, the Government argues that severance under Rule 14 is not required every time a defendant seeks to testify as to one set of charges and remain silent as to others. Gov't Resp. at 3. The Government notes that Defendant's Motion to Sever failed to set forth any specific, exculpatory testimony that would satisfy the Seventh Circuit's test for severance in the context of a conflict between a defendant's desire to testify to some counts but not others. Gov't Resp. at 4. However, Defendant's reply brief summarized Defendant's anticipated alibi testimony and addressed other shortcomings identified by the Government in its response brief. In response to Defendant's strengthened arguments, at the March 7, 2002, hearing on this matter, the Government noted that Defendant's alibi might be established without his testimony—through hospital records and/or the testimony of other witnesses. Finally, the Government asserts that even if the Court were to grant the requested severance, during his trial on the murder-related charges, Defendant will still be subject to cross-examination on the drug conspiracy charge because proof of a drug trafficking crime is an offense element necessary for conviction under 18 U.S.C. section 924(j). Gov't Resp. at 4–5. Thus, the Government concludes, Defendant "would therefore gain little by testifying in a separate trial" on the murder-related counts. Gov't Resp. at 5.

After advising the parties at the May 8, 2002, hearing that the Court was seriously considering granting Defendant's Motion to Sever, the Court asked the parties to address whether the requested severance might eventually intrude upon the double jeopardy protections afforded by the Fifth Amendment. Specifically, the Court was concerned that because proof of a drug trafficking crime is an offense element under 18 U.S.C. section 924(j), if Defendant were first tried and convicted on the drug distribution conspiracy charged in Count 1, the Government might seek to rely on that conviction by asserting its collateral estoppel effect in Defendant's second trial on the 18 U.S.C. section 924(j) charge in Count 10 (firearms murder in furtherance of a drug trafficking crime). Such a scenario might run afoul of the Double Jeopardy Clause's bar on subsequent prosecutions that seek to " 'establish an essential element of an offense charged . . . [by] prov[ing] conduct that constitutes an offense for which [the] defendant has already been prosecuted.' " *United States v. Cyprian*, 23 F.3d 1189, 1197–98 (7th Cir. 1994) (alterations added) (quoting *Grady v. Corbin*, 495 U.S. 508, 521, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990)).

---

4. In support of that contention, Defendant relies heavily on a political science professor's article regarding the apparent risks associated with a court's refusal to sever *co-defendants* in capital cases. Def. Rep. at 3. Of course, the Court is not faced with that issue here.

In response to the Court's concerns, Defendant and the Government each submitted additional pleadings addressing Defendant's Motion to Sever. In its new pleadings, the Government agreed that, if it first secures a conviction on the drug distribution conspiracy count, it "will not seek to prove the same conspiracy count [in a second trial on the 18 U.S.C. § 924(j) charge] by or through documents pursuant to a collateral estoppel theory," Gov't Second Supp. Resp. to Def.'s Mot. to Sever at 1. Indeed, the Government's use of collateral estoppel against a criminal defendant has met with disdain on at least one occasion. *See United States v. Pelullo,* 14 F.3d 881, 897 (3d Cir.1994) (finding district court erred by applying collateral estoppel effect of defendant's prior conviction of racketeering act by allowing conviction to be used as proof of predicate act on a RICO charge in subsequent trial). Even in the absence of the Government's agreement not to attempt to employ collateral estoppel in any second trial in this matter, the Court would not likely permit it.

 Significantly, in his new pleadings, Defendant has expressly advised the Court that double jeopardy problems will not arise even if the Government secures a conviction on the drug distribution conspiracy charged in Count 1 and then, through a conventional presentation of evidence (i.e., not by relying on collateral estoppel principles), pursues the murder-related charges in a second trial. Def's Second Supp. to Def's Mot. to Sever at 1–2; *cf. United States v. Hubbard,* 61 F.3d 1261, 1275 (7th Cir.1995) (rejecting double jeopardy claim where evidence of firearms violation upon which defendant had been convicted in first trial was offered, for other purposes, in second trial on other charges). Although the Court is satisfied that separate trials of the two sets of charges will not violate Defendant's Double Jeopardy Clause rights, *United States v. Powell,* 894

F.2d 895, 900 (7th Cir.1990) (convictions on charges of carrying a firearm in connection with a drug trafficking crime and participating in drug distribution conspiracy do not violate Fifth Amendment's prohibitions on multiple punishments for same offense because Congress specifically authorized cumulative punishments for such crimes), Defendant's continuing request for severance constitutes a waiver of any resulting double jeopardy problems. *Cyprian,* 23 F.3d at 1198 (defendant "waived the right to challenge [c]ount ... on double jeopardy grounds because his trial counsel did not object when the trial judge severed [that] [c]ount ... from the remaining counts"); *United States v. Andrews,* 754 F.Supp. 1206, 1209 (N.D.Ill.1990) (Aspen, J.) (severing counts and noting that absence of objection indicated that "defendants are apparently willing to accept the potential but remote double jeopardy risk created by our plan in return for the comparative advantage of the trials as severed"). In the end, "a constitutional right may be forfeited in criminal as well as civil cases by the failure to make a timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944). With those issues resolved, the Court will now consider the merits of Defendant's motion.

## DISCUSSION

 A defendant bears a heavy burden of showing prejudice from the joinder of two or more counts. *United States v. Berardi,* 675 F.2d 894, 899–900 (7th Cir. 1982); *United States v. Martin,* 18 F.3d 1515, 1518 (10th Cir.1994). In order to justify severance of counts, a defendant must "demonstrate that the alleged prejudice he [will] suffer[ ] outweigh[s] the expense and inconvenience of separate trials." *Martin,* 18 F.3d at 1518 (quoting *United States v. Parra,* 2 F.3d 1058, 1063

(10th Cir.1993)); *United States v. Donaldson*, 978 F.2d 381, 391 (7th Cir.1992) ("trial court is to balance the cost of conducting separate trials against the possible prejudice inherent in a single trial"). In assessing the potential prejudice arising from the joinder of counts, this Court has broad, "virtually unlimited," discretion. *United States v. Zackson*, 6 F.3d 911, 922 (2d Cir.1993); *see also United States v. Freland*, 141 F.3d 1223, 1226–27 (7th Cir. 1998). In exercising its discretion, this Court "should balance the interests of the defendant against the needs of judicial economy." *United States v. Tedesco*, 726 F.2d 1216 (7th Cir.1984).

Rule 8 permits the joinder of two or more offenses if the crimes are: (1) of the same or similar character; (2) based on the same act or transaction; or (3) based on two or more acts or transactions connected together or constituting a common scheme or plan. Fed.R.Crim.P. 8(a); *United States v. Archer*, 843 F.2d 1019, 1021 (7th Cir.1988). The Seventh Circuit has instructed district courts to "construe Rule 8 broadly to allow joinder to enhance the efficiency of the judicial system ... and to avoid expensive and duplicative trials, if judicial economy outweighs any prejudice to the defendant." *Archer*, 843 F.2d at 1021 (citations omitted); *see also Freland*, 141 F.3d at 1226; *United States v. Alexander*, 135 F.3d 470, 476 (7th Cir. 1998).

The Seventh Circuit has formulated two slightly different tests for analyzing whether the joinder of charges is proper under Rule 8. First, our appellate court has stated that in order to assess the propriety of joinder under Rule 8, it looks "solely to the face of the [G]overnment's indictment and not to any evidence ultimately presented at the defendant's trial." *Alexander*, 135 F.3d at 476. Second, the court of appeals has stated that "[i]n determining whether the connection between

the acts charged is sufficient to meet the requirements of joinder under Rule 8(a), the court should be guided by the extent of evidentiary overlap." *Berardi*, 675 F.2d at 899–900 (finding joinder proper where there was "substantial overlap in the evidence" used to prove defendant's guilt on extortion, mail fraud and obstruction of justice counts); *see also Donaldson*, 978 F.2d at 391 ("offenses may be joined if they occur within a relatively short period of time, and the evidence of the several counts overlaps").

 Here, under either test, joinder of the drug and murder-related charges is proper because the alleged murder was part of "a common scheme or plan"—the alleged drug distribution conspiracy. The face of the superseding indictment reveals that joinder is proper under Rule 8 because proof of the drug trafficking conspiracy alleged in Count 1 (a charge which itself is supported, in part, by the separate offenses charged in Counts 2, 3, 6, 7, 8, and 9) is incorporated as an offense element of the firearms-murder-in-furtherance-of-a-drug-trafficking-crime charge in Count 10. Quite simply, because Count 10 incorporates Count 1 as a predicate offense, the drug-related charges are properly joined with the murder-related charges. Similarly, because Count 10 incorporates Count 1 as a predicate offense, the evidence presented in support of the Government's charges on those counts will *necessarily* overlap. As such, the Government has properly joined the drug and murder-related charges in the superseding indictment. Rule 8(a)'s protections have not been violated.

 Once Rule 8(a)'s requirements are met by the allegations in the indictment, severance is controlled by Rule 14. *United States v. Balzano*, 916 F.2d 1273, 1280 (7th Cir.1990). Even though distinct offenses have been joined properly under

Rule 8(a), a court may grant severance under Rule 14 if it appears that the defendant will be prejudiced by the joinder. *Berardi*, 675 F.2d at 900; *see also United States v. Buchanan*, 930 F.Supp. 657, 667–68 (D.Mass.1996) (distinguishing between defendant's burden to show Rule 14 violation on appeal versus "lighter" burden when presenting Rule 14 motion to district court). Rule 14 specifically authorizes a court to prevent prejudice by ordering, among other things, "separate trials of counts" or "whatever other relief justice requires." Fed.R.Crim.P. 14.

The joinder of multiple counts arising from separate occurrences exposes a defendant to potential difficulty in presenting distinct defenses. For instance, "a defendant may be willing to take the stand and testify as to one count but might prefer to remain silent and put the government to its proof on another count." *United States v. Lewis*, 547 F.2d 1030, 1033 (8th Cir. 1976). "The risk of exposing himself to cross-examination on one count in order to testify as to the other presents a dilemma which obviously contains the seeds of prejudice." *Id.* Although the Seventh Circuit holds that severance is not mandatory every time a defendant wishes to testify as to one charge but to remain silent on another, it recognizes that a need for severance arises when a defendant "makes a convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other count." *Archer*, 843 F.2d at 1022 (citing *Baker v. United States*, 401 F.2d 958, 977 (D.C.Cir.1968)); *see also Freland*, 141 F.3d at 1227; *Alexander*, 135 F.3d at 476.

Here, Defendant meets both prongs of the *Archer* court's test for severance in the context of conflicting testimonial imperatives. Under the first prong, the Court agrees that Defendant's previously asserted alibi defense to the murder-related counts (i.e., that he was at a hospital with his son and others at the time of the murder) constitutes "important testimony." Indeed, given that Defendant is facing the death penalty if convicted on Count 10, his alibi testimony on this count may be *critically* important if the jury accepts it and, by so doing, eliminates any chance of Defendant receiving the death penalty. Admittedly, Defendant could assert his alibi defense without taking the stand—by adducing documentary evidence and witness testimony in an attempt to demonstrate that he was elsewhere during the murder. However, "a defendant's testimony 'in his own trial is unique and inherently significant.'" *Rodriguez v. United States*, 286 F.3d 972, 985 (7th Cir.2002) (quoting *Nichols v. Butler*, 953 F.2d 1550, 1553 (11th Cir.1992)).

With respect to the second prong, Defendant raises the same argument as the defendant in *Archer*: that his best hope for acquittal is to remain silent on the drug-related counts and force the Government to prove its case without the benefit of his testimony. *Cf. Lewis*, 547 F.2d at 1033–34 (noting that defendants may prefer to remain silent and put Government to its proof on certain counts, but concluding that district court did not abuse its discretion in denying severance motion because defendant did not even contend he would have testified if district court had severed counts). In essence, Defendant's avowed reasons for not wanting to testify on the drug-related charges may simply come down to the fact that Defendant does "not wish to help" the Government prove the drug conspiracy charge. *United States v. Alosa*, 14 F.3d 693, 695 (1st Cir.1994) (affirming district court's denial of motion to sever drug conspiracy and use-of-a-firearm-in-furtherance-of-a-drug-trafficking-crime charges). The limited case law on severance motions arising from conflicting testimonial imperatives does not "greatly

illuminate" what "kind of 'strong' reasons explain the need not to testify on other counts." *Id.* Although *Archer,* 843 F.2d at 1022, suggests that a defendant's simple desire to put the Government to its proof is a sufficiently strong reason not to testify as to some counts, another Seventh Circuit case rejected a defendant's more detailed reasons for seeking not to testify to certain counts. *United States v. Ely,* 910 F.2d 455 (7th Cir.1990). In the absence of clear guidance from the Seventh Circuit on this issue, the Court is satisfied that Defendant's desire to put the Government to its proof on the drug-related counts is a sufficiently strong reason, under the conflicting testimonial imperatives test set forth in *Archer,* for Defendant not to testify regarding the drug-related charges.

Importantly, the calculation of whether the possible prejudice Defendant will suffer in the absence of severance outweighs the cost of conducting separate trials is different in this case for two reasons. First, because this is a death penalty case and Defendant's alibi testimony goes to the count that carries the death penalty, the possible prejudice that would result if Defendant is deterred from testifying on that count by the cross-examination he would face on the drug-related charges adds to the prejudice side of the ledger. Second, the fact that the drug distribution conspiracy charge in Count 1 is an offense element for the murder-related charge in Count 10 means that Defendant's acquittal on Count 1 in a first trial will almost certainly prevent the Government from pursuing Count 10 in a second trial. *See, e.g., Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *but see United States v. Anderson,* 59 F.3d 1323, 1326 (D.C.Cir.1995) ("We, therefore, hold to our previous view that a § 924(c)(1) conviction stands on its own even if the defendant is acquitted of the underlying offense or the underlying offense is not charged, so long as the government pres-

ents sufficient evidence to prove the predicate offense as an element of the § 924(c)(1) violation.") Thus, the Court's assessment of the costs associated with a second trial on the murder-related charges is informed by the prospect that Defendant's acquittal on the drug distribution conspiracy charge at the first trial will likely eliminate the need for a second trial.

▮ Accordingly, given Defendant's showing of both important testimony on the murder-related counts and sufficiently strong reasons not to testify on the other counts, the Court agrees that Defendant should be allowed—without risking cross-examination on the drug-related counts— to present his own uniquely compelling testimony in support of his alibi defense to the count which, after all, could result in imposition of the death penalty. This can only be accomplished through severance of the two sets of counts. *See, e.g., Cross v. United States,* 335 F.2d 987 (D.C.Cir. 1964); *United States v. Jordan,* 112 F.3d 14 (1st Cir.1997).

As for the Government's argument that during any second trial on the murder-related charges Defendant will still be subject to cross-examination on the drug conspiracy charge because proof of a drug trafficking crime is necessary for conviction under 18 U.S.C. section 924(j), the Court notes that this scenario still benefits Defendant. Although his testimony at the second trial will be subject to cross examination on the drug trafficking component of the section 924(j) charge, Defendant will have less to lose as a result of that cross examination because the drug-related Counts will have already been resolved (presumably against him) during the first trial. In short, because any second trial will include fewer counts, the stakes in such a trial are necessarily lower than in a single trial during which all counts are resolved.

In terms of scheduling, the Court would prefer to try the murder-related charges first, at the July 15, 2002 trial date. However, the current courthouse is ill-equipped to handle the increased security and larger jury pool necessary for a death penalty trial, and the parties are unwilling to try the case in another division within the Northern District of Indiana. *See, e.g.,* Defendant's Motion to Bar Imposition of Death Penalty And To Prohibit The Government From Public Comment, filed January 25, 2002 (no page numbers) (rejecting possibility of change of venue to another division within the Northern District of Indiana). Trying the murder-related counts in the new courthouse would be ideal; in fact, the Court and its staff may be able to move into the new courthouse before July 15, 2002. However, the Court has far too much experience with the ever-changing occupancy dates for this new courthouse to rely on that possibility. Given these complications, the Court will reluctantly try the drug-related counts first—in whichever courthouse the Court finds itself on July 15, 2002.

In light of the Court's decision to grant Defendant's motion based on his arguments regarding conflicting testimonial imperatives, there is no need to address Defendant's claim that, in a single trial on all counts, evidence of guilt on the drug-related charges could "spillover" into the jury's assessment of the murder-related charges. Although "this is an important issue," the Court need not explore it here. *Freland,* 141 F.3d at 1227.

*CONCLUSION*

For the reasons set forth above, Defendant's Motion to Sever Counts 10 and 11 from Counts 1, 2, 3, 6, 7, 8, and 9 is **GRANTED**. The trial on Counts 1, 2, 3, 6, 7, 8, and 9 shall begin at 8:30 a.m. on July 15, 2002. Counts 10 and 11 shall be held in abeyance and, if necessary, scheduled for trial by a future order of this Court. All other deadlines in this case shall stand.